## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD BARSODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 3:21-cv-00091 |
| | ) | |
| CLEARFIELD AREA SCHOOL DIST., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

In this civil rights employment discrimination action, Plaintiff Leonard Barsody sues Defendant Clearfield Area School District ("CASD") alleging he was unlawfully terminated from his job in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* (Complaint ECF No. 1). Barsody also alleges claims of hostile work environment, retaliation, and constructive discharge. Presently, before the Court is CASD's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) and Brief in Support (ECF Nos. 9, 10). Barsody filed a Response to the Motion (ECF No. 13). He also filed a "Declaration" (ECF No. 14) and Exhibits (ECF No. 15) which contain 85 exhibit attachments in total. CASD filed a Reply objecting to, among other things, Barsody's exhibits at ECF Nos. 14 and 15. Barsody seeks compensatory and punitive damages for past wages, future wages, pension, benefits, character, and reputation, and pain and suffering. For the reasons that follow, the Motion to Dismiss will be granted.

### I. Factual Background

Plaintiff Barsody states in his Complaint that during the years of 2012 and 2013 he struggled with mental health issues and unemployment and, on two occasions, was admitted to the psychiatric unit at Warren General Hospital in Warren, Pennsylvania. *See* ECF No. 1, ¶ 10.

Barsody does not state a diagnosis in his Complaint but claims that "[t]hese facts qualify the Plaintiff as having a disability under ADA, 42 U.S.C. §12102." *Id.* Barsody was later hired as a physics teacher at Clearfield Area Junior/Senior High School from August 2014 until his resignation on May 3, 2021. *See* ECF No. 1, ¶¶ 6, 56. Coinciding with Barsody's employment with CASD, and with the approval of his therapist, from June 2017 to June 2018, Barsody weaned from his mental health medications that aided him in maintaining a "normal work/sleep cycle in his daily life." ECF No. 1, ¶ 11. Barsody's behavioral health outpatient treatment concluded after his medications were terminated. *See id.*

Barsody states that from 2016 to the date of his Complaint he "was targeted and victimized by various acts of harassment, according to PA Title 18 § 2709(a), and with various frequencies of occurrence." ECF No. 1, ¶ 12. "Most acts of harassment occurred within the local community and surrounding areas . . . [by] some employees and students of the Defendant." *Id.* Barsody states that the harassing statements included, "You're girlfriend is cheating on you," "You have mental health issues," "You're going to get beat up," "You're going to get hit," "You're going to get shot," "We're going to put some lead in your act," "I'm going to purple-heart you and blow your head off," "Your whole family is going to get shot and killed." ECF No. 1, ¶ 13. Barsody alleges some of these comments were made within the Clearfield Junior/Senior High School by students and staff, *see* ECF No. 1, ¶¶ 16, 17, 23, and that some of CASD employees knew his previous mental health history and intended to harm his career and personal life. *See id.* ¶ 18. Barsody "made only a few reports to the high school administration and teacher union" about the harassment. *See id.* ¶ 19. Barsody's Complaint does not provide any response given to these reports.

During some of this time-period the COVID-19 Pandemic caused many of the CASD students to fall behind in academics or fail classes.  In Mid-September 2020, Eric Scaife, the assistant principal at Clearfield Junior/Senior High School, called a meeting with Barsody to discuss parents' complaints about their children failing Barsody's physics class.  *See* ECF No. 1, ¶ 25.  On September 14th and 21st Barsody called the Pennsylvania State Education Association ("PSEA") to speak to someone about the hostile work environment at his place of employment. *See id.* ¶ 26.  Barsody did not report the hostile work environment to the teachers' union because he felt persons with key positions in the union would have a conflict of interest.  *See id.*  The Complaint is not specific whether the "hostile work environment" referred to the harassing comments or the meeting called by Scaife.  PSEA advised Barsody to speak with the teachers' union, which he did.  *See* ECF No. 1, ¶¶ 27, 28.  In the meantime, Barsody and Scaife had a second meeting to discuss the students failing physics class.  *See* ECF No. 1, ¶ 29.  Barsody was concerned for the security of his job and requested a third meeting with Scaife and Mr. Wright of the teachers' union.  *See* ECF No. 1, ¶ 30.

On October 27, 2020, the third meeting took place with Scaife, Wright, and Barsody, and it also included Andrew Brickley and Heather Prestash, the assistant principal, and principal of Clearfield Junior/Senior High School, respectively.  *See* ECF No. 1, ¶ 31.  At this meeting Barsody disclosed all his concerns about the harassment he was experiencing and had experienced dating as far back as 2012 when he was working in Pittsburgh.  *See* ECF No. 1, ¶ 32.  His presentation was emotional and included cuss words.  *See id.*  Barsody also disclosed that he was a recovered alcoholic and had been six years sober and that he had been admitted to the psychiatric unit at Warren General Hospital in the past.  *See id.*  On October 28, 2020, Barsody attended work as

usual but again experienced harassment from a retired substitute teacher who walked past his classroom door and shouted something to him referring to a sawed-off shotgun. *See id.* ¶ 33.

On the evening of October 28, 2020, Barsody received a phone call from Wright, of the teachers' union, and Terri Moore, of PSEA, notifying Barsody that he was on Paid Directed Administrative Leave to begin the next day, October 29, 2020, and he was required to (1) submit lesson plans to Prestatsh and Scaife, and cc: Wright; (2) not enter school property; and (3) attend one counseling session before returning to work. *See* ECF No. 1, ¶ 34. Barsody completed all three directives by November 3, 2020. *See id.* ¶¶ 39, 41. Barsody was not released from administrative leave to return to work upon completion of the directives. On November 14, 2020, after requesting it, Barsody received a statement from CASD signed by Superintendent Struble which required Barsody to complete an Independent Medical Examination ("IME") "fitness for duty" evaluation with a psychiatrist. It cited 24 P.S. § 14-1418(c) "School boards may require a special medical examination for any school employee at any time." *See* ECF No. 1, ¶ 44. It also stated, "This is not the result of a disciplinary concern, but is a concern for your overall health and well-being." *Id.*

Barsody did not complete or was unable to complete the IME immediately. On January 19, 2021, the solicitor of CASD stated that Barsody must complete the IME by January 22, 2021, or he must go on "paid sick leave or he can explore a sabbatical leave for restoration of health until such time that the letter and or report is received." ECF No. 1, ¶ 49. Barsody's personal/sick days were exhausted as of April 27, 2021. *See* ECF No. 1, ¶ 55. Barsody had an IME "fitness for duty" evaluation scheduled for May 15, 2021. *See* ECF No. 1, ¶ 54. Nevertheless, on May 3, 2021, Barsody submitted his letter of resignation citing "hostile work environment" and "irreconcilable differences." ECF No. 1, ¶ 56.

Barsody filed two Equal Employment Opportunity Commission ("EEOC") Complaints about the facts of this case. But he only attached one EEOC Complaint (#533-2021-00429) as an exhibit to his Civil Complaint (ECF No. 1-1). Barsody states he timely filed EEOC Complaint #533-2021-00429 on December 14, 2020. *See* ECF No. 13, p. 8. The EEOC Charge Form 5 alleges Barsody was put on Administrative Leave because of "issues that came up in an October 27, 2020, meeting and regarding [Barsody's] overall health." ECF No. 1-1, p. 2. Form 5 was digitally signed by Barsody on February 23, 2021. On February 24, 2021, the EEOC determined it would not proceed with an investigation of Barsody's claim and it notified him that he could pursue his action in federal or state court within 90 days of the EEOC notice.[1] *See id.* at 2-3.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-

---

[1] Barsody filed a second EEOC Complaint on March 13, 2021, about the IME "fitness for duty" evaluation directive and a phone interview was held on June 14, 2021, after the filing of this federal action. Thus, the second EEOC Complaint was not exhausted before this lawsuit and will not be considered in the Court's evaluation of the case.

pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). A court may take judicial notice of documents filed in other court proceedings because they are matters of public record. *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

Finally, because Barsody is representing himself, the allegations in the Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Thus, the court may consider facts and make inferences where it is appropriate. But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, No. 2:17-CV-01624, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also Baez v. Mooney*, No. 1:20-CV-0009, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, No. 1:20-CV-9-SPB-RAL, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

## III.    Discussion

Barsody alleges four civil rights employment claims against CASD. First, he asserts a hostile work environment because of the harassment from students and colleagues that he says was

not addressed by CASD and for three meetings with Assistant Principal Scaife about students failing Barsody's physics class. Second, he asserts retaliation when CASD, through its employees or representatives, required him to submit to an IME "fitness for duty" evaluation before returning from administrative leave. Third, he asserts constructive discharge after he resigned citing hostile work environment as the reason. Finally, he asserts discrimination in the workplace because of his mental health disability.

CASD argues for the dismissal of all Barsody's claims. CASD states that Barsody failed to exhaust his administrative remedies for claims of hostile work environment, retaliation, and constructive discharge. In the alternative, CASD argues that Barsody did not satisfy the elements of these claims and therefore he failed to state a claim upon which relief can be granted. Likewise, CASD states that Barsody failed to state a claim upon which relief can be granted for the disability discrimination claim because he doesn't satisfy the elements of the claim.

### A. Barsody's Exhaustion of Claims of Hostile Work Environment, Retaliation, and Constructive Discharge.

"[T]he ADA requires that a plaintiff administratively exhaust all claims before seeking relief in federal court." *Simko v. United States Steel Corp*, 992 F.3d 198, 206 (3d Cir. 2021) (citing *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001); 42 U.S.C. §§ 12117(a), 2000e-5(b)). "These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are 'essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action.'" *Id.* at 206-07 (citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)); *see also Anjelino v. New York Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) ("[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute."); *Churchill v. Star*

*Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) (noting that claims asserted under the ADA must be filed in adherence with the administrative procedures set forth in Title VII); 42 U.S.C. §§ 12117(a), 2000e-5. In Pennsylvania, an aggrieved party must initiate this pre-suit procedure by filing a charge with the EEOC within 300 days of the challenged employment action. *See Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000); 42 U.S.C. § 2000e-5(e)(1).

Attached to Barsody's Complaint is EEOC Form 5 Charge of Discrimination and the EEOC's Dismissal and Notice of Rights that informed Barsody that the EEOC will not proceed further with its investigation of the matter and that he may proceed in suing if he so chooses. Barsody's Charge of Discrimination states the following:

1.  On October 26, 2020, I was given directives via email to change classroom management practices. On October 27, 2020, I had a meeting with administration. On October 28, 2020, I was told I would be placed on paid administrative leave. On October 29, 2020, I was placed on administrative leave. On November 13, 2020, the district issued a formal statement concerning paid administrative leave.

2.  The reason given by Eric Scaife, Assistant Principal, for the counseling was regarding labs and grades. The reason given by Terry Struble, Superintendent, for the paid administrative leave was for issues that came up during the October 27, 2020 meeting and regarding my overall health.

3.  I believe I have been discriminated against in violation of the Americans with Disabilities Act of 1990, as amended.

ECF No. 1-1, p. 2. Of particular note, is Form 5 has a box to check for "Retaliation" which Barsody did not check. The basis of CASD's argument is that "there are no facts or language within the charge to even remotely suggest that a hostile or abusive atmosphere was occurring in the workplace," ECF No. 10, p. 8, and that likewise retaliation and constructive discharge is not within the scope of the EEOC charge. *See id.* at 8-9. Barsody disagrees and states that his claims of hostile work environment, retaliation, and constructive discharge were fairly within the scope of the EEOC charge because all claims relate to his identification as a protected class.

"The 'relevant test' for determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether 'the acts alleged in the subsequent ... suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom.'" *Simko,* 992 F.3d at 207 (citing *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir. 1984)). The Court will evaluate each claim below.

### 1. Hostile Work Environment

"A claim for hostile work environment based on disability requires an evidentiary showing that, inter alia, the plaintiff is a qualified individual with a disability under the ADA." *Amorosi v. Molino,* No. 06–5524, 2009 WL 737338, at *7 (E.D.Pa. Mar. 19, 2009) (citing *Walton v. Mental Health Ass'n of Se. Pa.,* 168 F.3d 661, 667 (3d Cir.1999)).[2] To establish a *prima facie* hostile work environment claim under Title VII and the PHRA,[3] a plaintiff must show "(1) the employee suffered intentional discrimination because of their [disability]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person ... in that position; and (5) the existence of respondeat superior liability." *Burgess v. Dollar Tree Stores, Inc.,* 642 F. App'x 152,

---

[2] CASD argues, in the alternative, that Barsody has failed to prove that he is a qualified individual with a disability under the ADA. The Court will address this argument in the context of the discrimination claim *infra.*

[3] "The court subsequently explained that '[d]isability discrimination claims under the ADA are subject to the same burden-shifting framework as race discrimination claims under § 1981, title VII, and the PHRA [Pennsylvania Human Relations Act]." *Dreibelbis v. Cnty. of Berks,* 438 F. Supp. 3d 304, 312 (E.D. Pa. 2020). "[T]he ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007)

154–55 (3d Cir. 2016) (citing *Huston v. Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104

(3d Cir.2009)).

 The Court must take several steps to determine whether the language in Barsody's EEOC

charge encompasses the hostile work environment claim he alleges in his civil rights Complaint.

"[T]he original charge is the touchstone of our exhaustion analysis." *Simko v. United States Steel*

*Corp,* 992 F.3d at 210; *see, e.g., Antol,* 82 F.3d at 1296 (focusing on the "specifics of ... [the]

charge" in determining whether a new claim is encompassed by the charge).

> First, we closely examine the original charge's contents to determine the reasonable
> scope of the EEOC investigation that would likely occur. *See Robinson v. Dalton,*
> 107 F.3d 1018, 1024 (3d Cir. 1997). Second, we parse the later claim and determine
> whether its allegations would be covered in that reasonable investigation. *See Hicks*
> *v. ABT Associates, Inc.,* 572 F.2d 960, 966 (3d Cir. 1978). At bottom, we must
> compare the two sets of allegations and evaluate whether they are sufficiently
> related such that a reasonable investigation of the original charge would address the
> subsequent, unexhausted claims. In comparing the two sets of allegations, we look
> for factual similarities or connections between the events described in the claims,
> the actors involved, and the nature of the employer conduct at issue.

*Simko,* 992 F.3d at 210–11.

 In his Complaint, Barsody alleges two sources of a hostile work environment. The first is

intermittent and pervasive harassing comments directed at him by students and coworkers on

school property, as well as unknown individuals outside of school property. The second source of

the alleged hostile work environment was by the three meetings (third requested by Barsody)

called by Assistant Principal Scaife to address students failing Barsody's physics class. *See* ECF

No. 1, ¶¶ 25-31 (In response to the first meeting called by Scaife "Plaintiff made phone calls on

September 14, 2020 and September 21 to the Pennsylvania State Education Association (PSEA)

to speak to someone concerning the elements of a hostile work environment at his place of

employment of the Defendant." *Id.* ¶ 26). In Barsody's EEOC charge he does not mention

harassing comments, but he does state the multiple meetings that occurred about his "classroom

management."   Though Barsody doesn't use the terminology "hostile work environment," the Court finds that there is a nexus of facts given the three meetings and that Barsody's claim of hostile work environment is encompassed within the scope of the EEOC allegations.   The Court agrees with CASD that Barsody's claims of hostile work environment in the context of the alleged harassment through comments directed at him was not exhausted.   However, his claim of hostile work environment in the context of the multiple meetings called by Scaife falls within the purview of the EEOC charge and was therefore administratively exhausted.

The Court notes that "factual overlap alone, however, does not guarantee that the new allegations are encompassed by the original charge if they do not fall within the 'gravamen' of the initial charge." *Simko v. United States Steel Corp*, 992 F.3d at 211.   The Court here finds that there is a factual nexus on a substantial part of Barsody's claim *and* that a reasonable investigation of the facts would cover the hostile work environment claim.   *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976).   Both the discrimination claim and the hostile work environment claim have the same actors and events at issue.

### 2.   Retaliation

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995)).   Barsody asserts that he was retaliated against when CASD, through its employees or representatives, required him to submit to an IME "fitness for duty" evaluation before returning from administrative leave.   He

says this request stemmed from the fact that he asked CASD to provide the terms of administrative leave in writing.

As to retaliation, the Court cannot say this claim was exhausted by the allegations made in Barsody's EEOC charge. First, the facts alleged in the EEOC document never mention the IME "fitness for duty" evaluation request by the employer. Furthermore, while it mentions that "the district issued a formal statement concerning paid administrative leave" it does not say that Barsody requested it, nor does it state that after its issuance that he was required to perform further directives before being reinstated. Finally, Barsody did not check the very clearly displayed box for "RETALIATION" in the EEOC charge, while he did check the box for "DISABILITY."

To reiterate, "[g]iven the fact-specific nature of the exhaustion inquiry, our precedent in this area—*Hicks, Waiters, Antol,* and *Robinson*—provides useful guidance. As these cases demonstrate, when determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko v. United States Steel Corp*, 992 F.3d at 209. Given these facts in this case the Court does not find that the retaliation claim arises from the same set of facts expressed in the EEOC charge, nor can it conclude that the EEOC would have investigated Barsody's case for retaliatory action as a natural extension of the facts described in the EEOC charge. Thus, Barsody needed to file an amended EEOC charge advancing that claim within the ADA's 300-day filing period. Because he failed to do so, Barsody's retaliation claim is dismissed with prejudice for failure to exhaust. The Court declines to evaluate this claim on its merits.

### 3. Constructive Discharge

"A person is constructively discharged when an employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Bearley v. Friendly Ice Cream Corp.,* 322 F. Supp. 2d 563, 577 (M.D. Pa. 2004) (internal citations omitted). CASD argues that Barsody failed to exhaust this claim and, in the alternative, failed to plead a cognizable constructive discharge claim.

The facts indicate that Barsody filed his EEOC charge on February 23, 2021 and received the notice of his right to sue on February 24, 2021. He did not resign from his position with CASD until almost three months later, on May 3, 2021, citing "hostile work environment" and "irreconcilable differences". A claim of constructive discharge could not have been contemplated as part of the scope of the EEOC charge nor could it have been a natural extension of the EEOC investigation that occurred in February. The Court need not evaluate the merits of the allegations of constructive discharge and dismisses the claim with prejudice for failure to exhaust.

## B. Barsody did not Satisfy the Elements of Disability Discrimination Claim (Hostile Work Environment).[4]

At the outset the Court states that at the Motion to Dismiss stage Barsody need not prove all the elements of the claim to avoid dismissal. For the claim to move forward Barsody need only present a facially plausible claim as required by the rules. A plaintiff "need not plead all of the prima facie elements of a discrimination claim "because those elements may not be required at trial." *Kelly v. HD Supply Holdings, Inc.*, No. CIV. 14-372 RBK/AMD, 2014 WL 5512251, at *4 (D.N.J. Oct. 31, 2014); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002). "Instead,

---

[4] Because the claim for Disability Discrimination fails, it must necessarily follow that Barsody's Hostile Work Environment claim must also fail. Barsody has not necessarily proven that he has an ADA recognized disability as explained in the Court's analysis. "A claim for hostile work environment based on disability requires an evidentiary showing that, inter alia, the plaintiff is a qualified individual with a disability under the ADA." *Amorosi v. Molino,* No. 06–5524, 2009 WL 737338, at *7 (E.D.Pa. Mar. 19, 2009)

as with Title VII discrimination claims at the pleadings stage, [an] ADA claim must be facially plausible and give fair notice to the defendants of the basis of the claim." *Dreibelbis v. Cnty. of Berks,* 438 F. Supp. 3d 304, 313 (E.D. Pa. 2020) (internal quotations omitted).

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for relief under the ADA, a plaintiff must allege facts demonstrating "(1) [s/]he is a disabled person within the meaning of the ADA; (2) [s/]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s/]he has suffered an otherwise adverse employment decision as a result of discrimination." *Eshleman v. Patrick Indus.,* 961 F.3d 242, 245 (3d Cir. 2020) (internal quotations omitted). The ADA considers a person disabled if they: "(A) [have] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [have] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). "[T]o be an individual with a disability, an individual is only required to satisfy one prong." 29 C.F.R. app. § 1630.2(g)(2).

CASD moves to dismiss Barsody's Complaint for failure to state a *prima facie* case of disability discrimination. First, CASD argues that Barsody's allegations are insufficient to support that he is disabled because he fails to sufficiently allege or support with evidence a substantial limitation on a major life activity. Next, CASD argues that Barsody's alleged impairment does not qualify as a disability under the ADA because it was a temporary, non-chronic condition, and Barsody was released from treatment more than two years before the meetings with district administrators. Finally, CASD argues that Barsody did not suffer any adverse employment action

by his placement on administrative leave, counseling directive, or requirement for IME "fitness for duty" evaluation.

### 1. Substantial Limitation on Major Life Activity

CASD argues that Barsody has failed to sufficiently allege that his mental health history and alcoholism substantially limited his major life activities.  Under the "actual disability" prong of the ADA, 42 U.S.C. § 12102(1)(A), a plaintiff must allege an impairment that substantially limits a major life activity.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).   The substantial limitation of an individual's ability to perform a major life activity is judged in comparison "to most people in the general population." 42 U.S.C. § 1630.2(j)(1)(ii). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

"When determining whether an impairment substantially limits a major life activity, courts examine (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact or the expected permanent or long-term impact of or resulting from the impairment."  *Emory v. AstraZeneca Pharm., LP,* 401 F.3d 174, 180 (3d Cir.2005) (citing 29 C.F.R. § 1630.2(j)(2)). EEOC regulations define "substantially limited" as an inability "to perform a major life activity that the average person in the general population can perform," or a significant restriction "as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Emory,* 401 F.3d at 180 (citing 29 C.F.R. § 1630.2(j)(1)). Thus, "[t]he determination of whether one is or is not disabled within the meaning of the ADA is an

16

individualized one to be made on a case-by-case basis." *Davis v. Davis Auto, Inc.,* No. 10–3105, 2011 WL 5902220, at *5 (E.D.Pa. Nov. 22, 2011) (citing *Bley v. Bristol Twp. Sch. Dist.,* No. 05–0029, 2006 WL 220669, at *5 (E.D.Pa. Jan. 25, 2006)).

In this case Barsody admits that he did not notify his employer that he has a mental health history or a history of alcoholism before the October 27, 2020, meeting.  When he became emotional, he revealed that he had been sober for six years and that he had committed himself to a psychiatric unit of a hospital years earlier.  However, Barsody alleges that his employer knew of his mental health issues because he received medication while using the health benefits provided to him through his job with CASD.  CASD denies that it would know medical issues based on health insurance records of its employees.  Barsody does not provide mental health records with his Complaint but later provides substantiation of his mental health disability in his "Declaration" (ECF No. 14).  In its Reply (ECF No. 16), CASD contests the use of these exhibits in the Court's consideration of its Motion to Dismiss.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. Wright & A. Miller, *Federal* Practice, *and Procedure* § 1357, at 299 (2d ed.1990)); *see also* Fed. R. Civ. P. 12, 56.  Thus, the Court cannot consider these records when considering this Motion to Dismiss. That being said, Barsody's brief description of his disability without substantiation is not enough for the Court to determine him as having a disability under the ADA.  Furthermore, Barsody provides absolutely no evidence or narrative to plead that his alleged disability deprives him of a major life activity.  In addition, the facts in his Complaint support that he may no longer be disabled given he was weaned from his medication (though the medication was not identified) in 2018, two

years before the pertinent facts of this case occurred. Thus, Barsody has failed to prove he has a disability under the ADA. Barsody will be permitted leave to amend, should he choose to do so, to provide sufficient allegations to support a finding that he is disabled under the ADA.

### 2. Adverse Employment Action

"[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 643 (W.D. Pa. 2018). When an employee's salary, reporting requirements, and general duties remain the same, there is typically insufficient evidence of an adverse employment action. *See Fiorentini v. William Penn Sch. Dist.*, 150 F.Supp.3d 559, 567 (E.D. Pa. 2016). That said, a change in employment status, responsibilities, or duties that does not create a reduction of pay or benefits may still qualify as an adverse employment action. *See Dilenno v. Goodwill Indus., of Mid-Eastern Pa.*, 162 F.3d 235, 236 (3d Cir. 1998) (assigning an employee a job that employer knew she could not perform in retaliation for a sexual harassment claim). The core inquiry is whether a reasonable jury could determine that the employee's employment was substantially worsened. *See id.* at 236.

The facts here demonstrate a series of events that occurred once CASD knew of Barsody's alleged mental health disabilities. After the third meeting where Barsody disclosed his past psychiatric hospitalizations and his alcoholism he was put on paid administrative leave and asked to provide his lesson plans, refrain from being on school grounds, and attend a counseling session. After satisfying CASD's directives he was asked to submit to an IME "fitness for duty" evaluation. There was delay in Barsody's obtaining the IME "fitness for duty" evaluation and he was told that he was being transitioned to paid sick leave and paid time off and that would be exhausted on a date certain. Once it was exhausted Barsody resigned.

Caselaw supports that a paid leave does not qualify as an adverse employment action.  *See Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 326 (3d Cir. 2015).  *See, e.g., Jones v. SEPTA*, No. 12-CV-6582-WY, 2014 WL 3887747, at \*4 (E.D. Pa. Aug. 7, 2014), *aff'd sub nom. Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323 (3d Cir. 2015) (The District Court held that Jones's suspension with pay did not constitute an adverse employment action under Title VII).  In addition, other courts of appeals have concluded that "placing an employee on paid administrative leave where there is no presumption of termination" is not an adverse employment action under the substantive provision of Title VII.  *Id.; see Joseph v. Leavitt,* 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."); *Singletary v. Mo. Dep't of Corr.,* 423 F.3d 886, 891– 92 (8th Cir.2005); *Peltier v. United States,* 388 F.3d 984, 988 (6th Cir.2004); *see also Von Gunten v. Maryland,* 243 F.3d 858, 869 (4th Cir.2001) ("placing [an employee] on administrative leave with pay for a short time to allow investigation" is not an adverse action for retaliation purposes), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 60 (2006); *Breaux v. City of Garland,* 205 F.3d 150, 158 (5th Cir.2000) (placement on paid administrative leave is not an adverse action for purposes of a First Amendment retaliation claim). *But cf. Dahlia v. Rodriguez,* 735 F.3d 1060, 1078–79 (9th Cir.2013) (en banc) (placement on paid administrative leave can be an adverse action for purposes of a First Amendment retaliation claim when it caused employee to lose promotional opportunities).

A paid suspension pending an investigation of an employee's alleged wrongdoing does not fall under any of the forms of adverse action mentioned by Title VII's substantive provision.  That statute prohibits discrimination in hiring, firing, and "compensation, terms, conditions, or

privileges of employment." 42 U.S.C. § 2000e–2(a)(1). A paid suspension is neither a refusal to hire nor a termination, and by design it does not change compensation. Nor does it affect a "serious and tangible" alteration of the "terms, conditions, or privileges of employment," *Storey v. Burns Intern. Security Services,* 390 F.3d 760, 764 (3d Cir. 2004). The Court agrees that a suspension with pay, "without more," is not an adverse employment action under the substantive provision of Title VII.

The subsequent action of requesting the IME "fitness for duty" evaluation, which is permitted under CASD's school rules, is also not considered an adverse employment action as the request did not change Barsody's compensation, terms, conditions, or privileges of employment and a reasonable jury would not conclude that his employment was substantially worsened.

Barsody's remained on paid administrative leave until January 19, 2021, when the solicitor of CASD stated that Barsody must complete the IME by January 22, 2021. If it was not completed by that date Barsody was told he must go on "paid sick leave or he can explore a sabbatical leave for restoration of health until such time that the letter and or report is received." ECF No. 1, ¶ 49. Barsody's personal/sick days were exhausted as of April 27, 2021. The exhaustion of Barsody's compensation may be considered an adverse employment action. The Court declines to engage in an evaluation of the burden shifting elements because as stated above, at the pleading stage, Barsody only need to have made a plausible claim based on the facts asserted in his Complaint and acceptable extrinsic evidence. Given that Barsody failed to establish an ADA recognized disability with any substantiation, and that the existence of a disability is quintessential to his allegations, the Court finds he has not established a plausible claim.

**IV.    Conclusion**

For the reasons stated above, Clearfield Area School District's Motion to Dismiss will be GRANTED as follows:

- The Motion to Dismiss as to the Hostile Work Environment claim is GRANTED.  As it relates to the three meetings with Assistant Principal Scaife and other employees and representatives of Defendant, this claim is dismissed without prejudice to allow Plaintiff to provide further facts, if available, to support this claim; and

- The Motion to Dismiss as to the claim of Retaliation is GRANTED; and

- The Motion to Dismiss as to the claim of Constructive Discharge is GRANTED; and

- The Motion to Dismiss as to the Disability Discrimination claim is GRANTED.  This claim is dismissed without prejudice to allow Plaintiff to provide further facts, if available, to support this claim.

An appropriate Order will be entered.

Dated: September 12, 2022

Stephanie L. Haines
United States District Court Judge